IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICIA E. LOHMEIER, | ) | CASE NO. 8:06CV578 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| BANCWISE REAL ESTATE SERVICES, L.L.C., | ) ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Court on a motion for summary judgment filed by the Defendant, BancWise Real Estate Services, LLC (hereafter "BancWise"). BancWise seeks summary judgment on all claims brought against it by the Plaintiff, Patricia E. Lohmeier. Lohmeier was employed by BancWise from March 2004 through February 4, 2005. Lohmeier alleges that her employment was terminated based on her age in violation of state and federal law. BancWise contends that it had a legitimate business reason for terminating Lohmeier's employment. The issues have been fully briefed, and both parties have offered evidence in support of their positions. (Filing Nos. 31, 32, 35-38). For the reasons that follow, the motion will be denied.

**Factual Background**

Based on the factual presentation presented in BancWise's brief, to which Lohmeier properly responded under the local rules, there are few facts at issue. BancWise opened its Omaha office on April 1, 2004, and its Lincoln office on October 1, 2004. (Filing No. 32, Ex. 1, Affidavit of Larry Zitek (hereafter "Zitek Aff.") ¶ 4). Before October 1, 2004, the Lincoln office was being managed by BancWise Chairman and Founder, Larry Zitek,[1]

---

[1] At the time of Lohmeier's termination from BancWise, Zitek was approximately 51 years old. (Zitek Aff. ¶¶ 1 and 11). Zitek has worked in banking and lending for 26 years and has been providing real estate brokerage services in a banking environment for more than nine years. (Id. ¶ 9).

though operating under the name Security First Bank of Lincoln. (Filing No. 35, Irish Dep. 6-7; Zitek Aff. ¶ 2).  BancWise does not consider itself to be a "traditional real estate company," but rather is a mortgage bank offering real estate brokerage services.  (Zitek Aff. ¶¶ 5 -6). The distinction is that, like a traditional real estate company, BancWise lists homes for sale, but its focus is on loans and lending.  (*Id.* ¶ Seven; *see also* Filing No. 32, Ex. 3, hereafter "Zitek Dep." 128:5-130:13).[2]  Zitek explains that traditional real estate companies charge a fee of seven percent (7%) of the sale price when they sell a home, but BancWise charges a flat rate of $2,500.  (Zitek Dep.131:24-132:21).  BancWise lists homes for sale for such a discounted rate in order to generate leads for loans.  According to Zitek, BancWise makes its profit from loans and not from the discounted listing fees. (Zitek Dep. 128:25-130:6).

When Lohmeier applied for the job of Managing Broker/Loan Officer with BancWise, she had 23 years of experience working in the Omaha real estate market.  (Filing No. 32, Ex. 2, hereafter "Lohmeier Dep." 33:6-12).[3]  The qualifications for the Managing Broker position identified by BancWise were two: 1) the applicant needed a real estate broker license, and 2) the applicant needed to possess a minimum of five years experience in real estate sales or management.  (Zitek Aff. Ex. A, Lohmeier Dep. 128).  Lohmeier initially interviewed with Kevin Irish, whom she has known for a "long time." (Lohmeier Dep. 38:22-40:6).  Irish was the Managing Partner for the BancWise Omaha office.  After a subsequent interview with Irish and BancWise President Dan Allison, Lohmeier was offered the Managing Broker position. (Lohmeier Dep. 39).   Irish and Allison were her co-

---

[2] Excerpts from Zitek's deposition are located at Filing Nos. 32, 35, and 38.

[3] Excerpts from Lohmeier's deposition are located at Filing Nos. 32 and 35.

2

supervisors.  (Lohmeier Dep. 52:1-11).  The information that Zitek had about Lohmeier's performance was from them.  When she was hired, Lohmeier was fifty-six (56) years old.  (Lohmeier Dep. 40:9-16; Zitek Aff. ¶ 9-10).  In addition to being the Managing Broker, Lohmeier states that she had loan officer responsibilities, which BancWise has refuted but had earlier acknowledged.  (Filing No. 35, Hoarty Aff., Ex. C).

The essential functions of the Managing Broker position, as described by Zitek, included the supervision and motivation of support staff and sales staff, management of the pipeline, management of the trust account, production of revenue on a part-time basis, and complete understanding of real estate valuation.  (Zitek Aff. ¶ 10).  Lohmeier said her responsibilities changed over time.   For example, when she first started, Lohmeier said that she spent most of her time helping the loan officers get their real estate licenses.  She supervised approximately 20 people, and she spent time generating income through listing properties and closing loans.  She said she worked to motivate the loan officers whom she supervised, and she also helped to "set policies for the office, maintain files, supervise employees, be an integral part of the decision-making process as to where you're going with policies and procedures."  (Lohmeier Dep. 32:14-23; 39-41; Filing No. 35, Lohmeier Aff. ¶7).  The Managing Broker position description identifies the "essential functions" of the job as follows:

1. Supervision and motivation of Support Staff and Sales staff . . .
2. Work closely with supervisor to coordinate sales and support staff
3. Manage pipeline
4. Manage trust account
5. Produce revenue on a part-time basis;
6. Negotiate and prepare real estate contracts;
7. Complete understanding of real estate valuation
8. Team player

>   9. Good understanding of "Seven Habits of Highly Effective People" (Covey)
>   10. Any additional duties assigned by supervisor.

Zitek Aff. Ex. A.

There seems to be no dispute that in the fall and winter of 2004, BancWise's Omaha office was losing money. BancWise took steps to manage the losses it incurred as a result of slow business by 1) cutting advertising; 2) cutting salaries; 3) reducing rent payments; and 4) in November 2004, reducing Irish's salary. (Zitek Dep. 133:2-12; Zitek Aff. ¶26). Zitek's belief was that the Omaha office was focused on home listings and sales. (*Id.* ¶ 15; Zitek Dep. 128:25-130:13). Zitek's view is that the Lincoln office was succeeding and the Omaha office was not succeeding, because the Lincoln office was properly implementing the BancWise business model which emphasized a focus on loans and lending. (Zitek Dep. 129:23-130:6; Zitek Aff. ¶13).

On February 4, 2005, Zitek traveled to Omaha to interview each Vice President/Loan Officer employed in the Omaha office. (Zitek Aff. ¶ 16; Zitek Dep. 130:3-21). Following these interviews, three loan officers were put on commission-only compensation plans; one loan officer was fired; another was let go by mutual agreement that BancWise was not a good "fit" for him; and the Managing Broker, Lohmeier, was fired. (Zitek Dep. 7:6:12-9:25).

There seems to be no dispute that Zitek had already decided to fire Lohmeier when he went to Omaha on February 4, 2005, and that he received input into the decision from Allison. (Filing Nos. 35 38, Allison Dep. At 25:16-23; 127:8-12). Zitek stated in his deposition that he reasoned that Lohmeier was responsible for training the staff, including the loan officers, and he felt that the Omaha office's performance demonstrated that she

4

had failed to train them properly on the lending side of the business. (Zitek Dep. 9:1-25; Zitek Aff. ¶ 17). During their February 4, 2005, meeting, which Lohmeier said took three or four minutes, Zitek informed Lohmeier that he felt that they were philosophically on different pages and that her employment with BancWise was being terminated. (Zitek Dep. 46:14-25) When Lohmeier asked for a reason, she recalls that Zitek told her that she did not fit the BancWise profile, a statement that Zitek denied making in his deposition, but which he acknowledged in his July 27, 2007, affidavit. (Compare Lohmeier Dep. 70-71 to Zitek Dep. 47:1-3 and Zitek Aff. ¶ 24). Lohmeier asked to continue with the company on a commission-only basis, but Zitek denied the request. (Lohmeier Dep. 70-71).

In explaining what he meant by "fit," Zitek stated that Lohmeier was not a "fit" for BancWise because she was a traditional real estate broker, and she did not function well in, or subscribe to, the BancWise business model. (Zitek Aff. ¶¶ 20, 21, and 24). Lohmeier states that she received no explanation for what Zitek meant by saying she did not "fit" the BancWise profile or model, but she understood the comment to be directed at her age. (Lohmeier Dep. 70-71, 83-84). The personnel form completed by BancWise and dated February 4, 2005, states that Lohmeier was "terminated due to lack of producing revenue for the company." (Filing No. 35, Hoarty Aff. Ex. G).

Following Lohmeier's termination, Julia Thiele assumed the Managing Broker position in Omaha. (Zitek Dep. 13:6-7). Lohmeier had supervised Thiele who had been employed as a loan officer. (Lohmeier Dep. 15:2-4). At the time, Thiele was 42 years old, approximately fifteen years younger than Lohmeier. When asked to compare herself to Thiele, Lohmeier said that she herself "sold much more expensive properties, [and] I sold

much more than she did and so was a much more successful real estate agent." (Lohmeier Dep. 13:18-24).

Lohmeier filed a charge of age discrimination with the NEOC, to which BancWise President Dan Allison responded. BancWise denied the allegations in the charge. (Filing No. 35, Hoarty Aff. Ex. C). In its March 18, 2005, response to the NEOC, BancWise identified the following reasons for Lohmeier's termination: that she sold 10 listings in an average of 51.1 days, when the company average was to sell in 41.7 days; that she on numerous occasions violated company procedures by not thoroughly touring homes before listing them; that as a loan officer she closed only nine loans compared to the company average of 17.1; and that she encouraged the loan officers to treat clients as money. (Filing No. 35, Hoarty Aff. Ex. C). This last reason stemmed from a motivational talk Lohmeier gave during which she told the loan officers to view clients with a $1,000 bill on their foreheads to emphasize the marketing and service that BancWise invests in each client.

Zitek explained in his deposition that he viewed the Omaha office's main problem as being that its two leaders, Lohmeier and Irish, had been "teaching, training, motivating, and running the Omaha office as a traditional real estate company" because they both came from "'traditional' real estate backgrounds. (Ex. 1, ¶¶ 19, 20; Zitek Dep. 129:17- 22; Lohmeier Dep. 59:11-14). Their traditional real estate backgrounds resulted in the Omaha office's deficit on the lending side of BancWise's business, according to Zitek.[4] He felt that

---

[4] Zitek stated that traditional real estate companies care about listings more than loans, and that the Omaha office has a "traditional" real estate mind set that produced too many overpriced listings. Under the BancWise model, overpriced listings and listings that expire "are deadly" because they consume time and resources but do not generate loans. BancWise could not make a profit from the discounted $2,500 listing fee, which is what it was charging in Omaha in 2004 and 2005. (Zitek Dep. 129:4-9.) The listing needed to

as a supervisor, Lohmeier should have been pushing lending, and she did not have the experience to do it or to teach others how to do it.  (Zitek Dep. 30:8-19).  Lohmeier stated that she did not push refinancing loans because she viewed that as the job of the Director of Lending, Jeff Nannen (age 43).  (Lohmeier Dep. 66:25-67:5; 69:7-17; Zitek Aff. ¶30).  Thus, Lohmeier also did not believe it was her "responsibility" to teach people how to push loans and refinancing.  (Lohmeier Dep. 67:6-15).  Prior to working at BancWise, Lohmeier had no experience in lending, and BancWise knew that. (Lohmeier Dep. 67:11-15).  Zitek believed that Lohmeier had a deficiency of knowledge and experience in banking and lending. (Zitek Aff.  ¶ 25).  Lohmeier estimated that 75% of her focus was on real estate while only 25% was on loans, but, at that, she had the third highest numbers in the Omaha office for loan closings.  (Lohmeier Dep. 68:25-69:10).

## Summary Judgment Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);  *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

---

be converted into loans for BancWise to make a profit. (Zitek Dep. 128:25-130:13; 132:3-21).

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  The Eighth Circuit Court has recently reiterated that "summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1034-35 (8th Cir. 2005) en banc; *Mayer v. Nextel West Corp.*, 318 F.3d 803, 806 (8th Cir. 2003) (citing *Keathley v. Ameritech Corp.,* 187 F.3d 915, 919 (8th Cir.1999)).

**Analysis**

Lohmeier has alleged violations of the Age Discrimination in Employment Act, (hereafter "ADEA"), codified at 29 U.S.C. §§ 621 *et seq.*, and the Nebraska Age Discrimination in Employment Act, (hereafter "NADEA"), codified at Neb. Rev. Stat. §§ 48-1001 to 48-1010 (2007).[5]  Both Acts prohibit an employer from terminating an employee based on age.  29 U.S.C. § 623(a)(1); Neb. Rev. Stat. § 48-1004.  Lohmeier presented no direct evidence of intentional age discrimination, and, therefore, the *McDonnell Douglas* analytical framework is employed to consider her claims and BancWise's motion for summary judgment.  *Mayer*, 318 F.3d at 806-07; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973).

---

[5] The Nebraska statutes were amended, among other reasons, to change the name of the Act to the Age Discrimination in Employment Act, as approved by the governor on May 31, 2007.

8

According to the familiar *McDonnell Douglas* burden-shifting framework, Lohmeier must establish a prima facie case of age discrimination. She must show that: (1) she was at least 40 years old, (2) she was terminated, (3) she was meeting BancWise's reasonable expectations at the time of her termination, and (4) she was replaced by someone substantially younger. *Mayer*, 318 F.3d at 807.

There is no dispute that Lohmeier has established the first, second and fourth elements. With regard to the third element, Lohmeier has offered evidence that she was fulfilling the primary requirements of her position in producing for the company in both the real estate listings and lending activity, and in the management, supervision, and training of the loan officers who reported to her. (Filing No. 35). The Court, mindful that the prima facie burden is not onerous, and that it should not be confused with the ultimate issue of the case, concludes that Lohmeier's evidence is sufficient to show that she was meeting BancWise's reasonable expectations. See *Landon v. Northwest Airlines, Inc.*, 72 F3d. 620, 624 (8th Cir. 1995) citing *Davenport v. Riverview Gardens School Dist.,* 30 F.3d 940, 944 (8th Cir. 1994).

The Court finds that Lohmeier has stated a prima facie case, which creates a rebuttable presumption of unlawful discrimination. The burden of production shifts to BancWise to show that it had a legitimate, nondiscriminatory reason for terminating her employment. It is undisputed that Lohmeier was one member of the Omaha office's management team, holding the title of Managing Broker. It is also undisputed that the Omaha office was not performing consistent with Chairman Zitek's expectations. Zitek has stated that he believed the Omaha office's poor performance was due, at least in part, to the office leaders' failure to follow the BancWise business model which required that

9

the lending part of the business generate at least one-third of the office's profits. (Zitek Dep. 21:1-11). Zitek has stated that he believes that Lohmeier's focus on the traditional real estate business, rather than on lending, was part of the reason for the Omaha office's poor performance, and for that reason, Zitek terminated her employment. Based on this evidence, the Court finds that BancWise has satisfied its burden of production at the second stage.

BancWise's stated reason for Lohmeier's termination defeats the presumption of unlawful discrimination, and the burden returns to Lohmeier to demonstrate that there is at least a genuine issue of material fact regarding whether BancWise's stated reason for her termination is simply a pretext for intentional age discrimination. *Mayer*, 318 F.3d at 807. The Court must consider whether genuine issues of material fact exist, and whether a reasonable inference of discrimination can be drawn from the evidence.

> At this stage, [the employee] "can avoid summary judgment only if the evidence considered in its entirety (1) created a fact issue as to whether [the employer's] proffered reasons are pretextual *and* (2) created a reasonable inference that age was a determinative factor in the adverse employment decision." *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir.1996) (emphasis added). The "sole remaining issue [is] discrimination *vel non*." *Reeves,* 530 U.S. at 143, 120 S.Ct. 2097.

*Haas v. Kelly Services, Inc.*, 409 F.3d 1030, 1035-36 (8th Cir. 2005).

Lohmeier argues that there is evidence of pretext in BancWise's failure to follow its own progressive discipline policy when it fired her. However, this fact alone carries little if any weight after *Haas*. In that case, the Eighth Circuit Court stated an employer "'can certainly choose how to run its business,' including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, 'as long as it does not unlawfully discriminate in doing so.' . . . [Where] [t]here is no evidence creating

10

a reasonable inference that age was a determinative factor in [the] termination[, t]he fact that [the employer] may have failed to follow human resources policy does not create such an inference." *Haas*, 409 F.3d at 1036.

This case is distinguishable from *Haas*, however, because Lohmeier has presented additional evidence to show that there is a genuine issue regarding whether BancWise's stated reason for the discharge should be believed, and also that there is a genuine issue regarding whether Lohmeier's age was a determinative factor in the decision to discharge her. Lohmeier's evidence of pretext includes evidence that BancWise's stated reasons for her termination have changed over time. For example, on the day of her termination, Zitek stated that Lohmeier did not "fit the BankWise profile" or that Lohmeier and BancWise had "philosophical" differences. In the personnel notice, Lohmeier was "terminated due to lack of producing revenue for the company." The multiple reasons listed in BancWise's response to the NEOC are different. According to that response, Lohmeier was discharged for failing to follow company procedure, for treating clients like money, and for unsatisfactory production. The Eighth Circuit Court has held that "shifting reasons" for adverse employment actions support a finding of illegal motivation. *Hall v. NLRB*, 941 F.2d 684, 688 (8th Cir. 1991). In addition, the Eighth Circuit has observed that an employer should not engage in "*post hoc* rationalization for its actions at the rebuttal stage of the case." *EEOC v. Wal-Mart Stores, Inc.* 477 F.3d 561, 570 (8th Cir. 2007). The Court finds that the reasons provided by BancWise for Lohmeier's termination have shifted sufficiently to create a genuine issue of material fact regarding whether BancWise's stated reason is the true reason for Lohmeier's discharge.

11

In addition, the Court finds that Lohmeier has offered sufficient evidence to create a genuine issue of fact regarding whether the true reason for Lohmeier's discharge was age-related. The hiring, firing, and promotional decisions made by BancWise in Omaha during 2005 at least raise a genuine issue as to whether age was a determinative factor. For example, it appears that Allison (whose age was estimated by Lohmeier to be in the late 20s or early 30s, *see* Lohmeier Dep. 77:20-78:10) had responsibility for hiring and training new loan officers in Omaha, but there is no indication that he suffered any adverse employment consequence for the Omaha office's deficient performance during the fall and winter of 2004. (Zitek Dep. 18:3-11). Allison hired two new loan officers on January 30, 2005, just days before the termination of Lohmeier. He hired Joey Pilakowsi (age 28) and John Meyer (age 32), neither of whom had lending experience. (Zitek Dep. 164:1-13). Within the week, Managing Broker Lohmeier was fired, as were loan officers Doug Anderson (age 58) and Dan Lewis (age 48). Four more loan officers were hired after February 4, 2005, and before August 2005: Shane Welsh (age 37 at hiring on February 14, 2005); Richard Troester (age 50 at hiring on March 1, 2005); Andrea Wilson (age 38 at hiring on April 1, 2005); and Russell Auen (age 61 at hiring on July 5, 2005). Of the new hires after February 2005, only Shane Welsh, who at age 37 was the youngest of these employees, was hired *before* BancWise received notice of Lohmeier's charge of discrimination. (Zitek Aff. ¶ 28). These hiring and firing decisions, though not perfect comparables, lend some support for Lohmeier's belief that the "whole crux was to get more pliable . . . young people that they could indoctrinate into their own way of thinking," and this evidence could be viewed by a jury to support a finding that age may have been a determinative factor in Lohmeier's termination. (Lohmeier Dep. 84:3-7).

12

There are other specific facts that create a genuine issue regarding whether age was a determinative factor in the decision:

- The three people fired from the Omaha office on February 4, 2005, were among the oldest employees in the Omaha office;

- BancWise former employee Kevin Pittenger testified that he heard either Zitek, Allison or Irish say, before Lohmeier was fired, "something about her [Lohmeier] being older and having a hard time keeping up with the younger people working there," (Filing N0. 35, Dep. 46:14-47:7);

- Other "leaders" of the Omaha office were not fired in February 2005: the Director of Lending Jeff Nannen (age 43) was not fired; the employee President of BancWise Dan Allison (age estimated by Lohmeier to be late 20s or early 30s) was not fired even though Zitek acknowledged that he also had responsibility for training loan officers, Managing Partner Kevin Irish (age 49) was let go, but not until August 2005;

- Lohmeier's performance as a loan officer and closer was superior to most of the officers in the Omaha office even though she had devoted most of her time to training new loan officers, which contradicts the assertion that she was fired based on her inability to generate revenue; and

- The person who replaced Lohmeier as the Managing Broker was substantially younger than Lohmeier, possessed less experience than Lohmeier, had not performed as well as Lohmeier had in either sales or lending; and possessed no lending experience prior to her employment at BancWise.

Because the employer's "motive and intent are at the heart of a discrimination case," the central inquiry "is whether [ . . . age] was a factor in the employment decision at the *moment* it was made." *Wal-Mart*, 477 F.3d 561 (quoting *Sabree v. United Bhd. of Carpenters & Joiners Local No. 33*, 921 F.2d 396, 403 (1st Cir. 1990) (emphasis in original) (internal quotations and citation omitted). The Court concludes this evidence is sufficient to raise a genuine issue of material fact regarding whether age was a

13

determinative factor, and that the motion should be denied on the federal and state age discrimination claims.[6]

BancWise also seeks partially summary judgment on whether Lohmeier is entitled to damages for unpaid commissions based on the 17 listings that she claims remained with BancWise upon her termination. BancWise argues that they are speculative and not legally recoverable, citing to Neb. Rev. Stat. §§ 76-2401 to 76-2430. BancWise contends that Nebraska law states that listings belong to the company and not the agent, and that BancWise had no legal duty to transfer the listing to Lohmeier after her termination. In addition, BancWise argues that Lohmeier contacted each of the individuals and they could have left BancWise and did not. (Lohmeier Dep. 129:24:130-2). Whether Lohmeier should be entitled to any damages based on the value of the loss of these listings depends, primarily, on whether she can show that BancWise terminated her employment based on a violation of the ADEA or the NADEA. The Court finds that questions remain for the jury relative to damages.

## Conclusion

Lohmeier's evidence of the shifting reasons given for her discharge and of the hiring and firing decisions made by BancWise in Omaha in 2005, create genuine issues of fact regarding the true reason for her termination. The Court finds that the evidence is sufficient to demonstrate that there is a genuine issue of material fact regarding whether age discrimination played some role in BancWise's decision to terminate Lohmeier, and

---

[6] The Nebraska Supreme Court employs the federal framework used in ADEA analysis in considering age discrimination cases brought pursuant to Nebraska's Age Discrimination in Employment Act, Neb. Rev. Stat. §§ 48-1001 to 48-1010 (2007). See *Billingsley v. BFM Liquor Management, Inc.,* 645 N.W.2d 791, 803 (Neb. 2002); *Allen v. AT & T Technologies, Inc.*, 423 N.W.2d 424, 431 (Neb. 1988).

if so, the amount, if any, of her damages. Accordingly, the Defendant's motion for summary judgment is denied in all respects.

For all these reasons,

IT IS ORDERED:

The Defendant's Motion for Summary Judgment (Filing No. 30) is denied in all respects.

DATED this 11th day of October, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge